**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SIERRA CLUB,

     *Plaintiff,*

  v.

BEN PALKOWSKI,

     *Defendant.*

No. 24-cv-741 (DLF)

**MEMORANDUM OPINION**

Sierra Club brings this action against Ben Palkowski, its former employee, who is proceeding *pro se*. Sierra Club pursues three claims against Palkowski: (1) breach of contract; (2) breach of fiduciary duty; and (3) violation of California's Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502. Before the Court is Sierra Club's Motion for Summary Judgment. Pl.'s Mot., Dkt. 23. For the reasons that follow, the Court will grant the motion.

## I.    BACKGROUND

On April 14, 2020, California-based Sierra Club hired Ben Palkowski as an accountant in its Washington, D.C., office. Declaration of Eric Wolf (Wolf Decl.), Ex. 2., at 1, Dkt. 24-2; *see* Pl.'s Statement of Material Facts (Pl.'s SOF) ¶¶ 1, 7, Dkt. 23-2; Def.'s Resp. to Pl.'s Statement of Material Facts (Def.'s Resp. SOF) ¶¶ 1, 7, Dkt. 26-1. The parties disagree about his exact duties and position titles at Sierra Club, but at some point Palkowski began serving as Interim Controller. *See* Pl.'s SOF ¶¶ 8–9; Def.'s Resp. SOF ¶¶ 8–9; Wolf Decl., Ex. 3, at 1–2, Dkt. 24-3.

Sierra Club employees must comply with its Confidentiality Policy as a condition of their employment. Pl.'s SOF ¶ 2; Wolf Decl. ¶ 5, Dkt. 24. This policy requires employees to "maintain

the confidentiality and respect the proprietary nature of" Sierra Club's "confidential and proprietary information." Pl.'s SOF ¶ 5; Wolf Decl., Ex. 1., at 3, Dkt. 24-1.  The policy also states that "[a]n employee who improperly uses or discloses Sierra Club confidential business information will be subject to disciplinary action up to and including termination of employment and legal action, even if he or she does not actually benefit from the disclosed information."  Wolf Decl., Ex. 1, at 3.

After Palkowski insulted fellow employees on multiple occasions, Pl.'s SOF ¶¶ 10–12; Def.'s Resp. SOF ¶¶ 10–12, and a permanent controller for Sierra Club was hired, Pl.'s SOF ¶ 9, Sierra Club's CFO, Adrienne Frazier, informed Palkowski on November 8, 2022, that his role as Interim Controller "would be coming to an end," *id.* ¶ 16; *see* Wolf Decl., Ex. 4, at 1, Dkt. 24-4. Palkowski was offered a senior accountant position.  Wolf Decl., Ex. 4, at 1.  On January 27, 2023, Palkowski emailed Frazier, copying others at Sierra Club, to accept the senior accountant position, "subject to my objections regarding compensation that will be the subject of a complaint I intend on filing with the Equal Employment Opportunity Commission" (EEOC).  Wolf Decl., Ex. 9, at 1, Dkt. 24-9; *see* Pl.'s SOF ¶¶ 23–24; Def.'s Resp. SOF ¶¶ 23–24.  Palkowski sent a second email one minute later to the same group asserting that the newly hired controller was earning a higher salary than he had been paid when he served as Interim Controller; that he would be filing charges with the EEOC for sex discrimination; and that he estimated his damages to be approximately $725,000.  Wolf Decl., Ex. 10, at 1, Dkt. 24-10; Pl.'s SOF ¶¶ 25–26; Def.'s Resp. SOF ¶¶ 25–26.

On February 16, 2023, Sierra Club's Director of Labor Relations emailed Palkowski about a "mandatory meeting" that "may result in disciplinary action."  Wolf Decl., Ex. 12, at 1, Dkt. 24-12; *see* Pl.'s SOF ¶¶ 28–29.  At the February 23, 2023, meeting, Palkowski was informed of certain "allegations against" him, including "potential violations" of Sierra's Standard of Conduct,

Employee Handbook, and the Employee Expectations for Confidential & Proprietary Information. Wolf Decl., Ex. 13, at 1, Dkt. 24-13; *see* Pl.'s SOF ¶¶ 40–41; Def.'s Resp. SOF ¶¶ 40–41.  The Director of Labor Relations informed him that he was "placed on administrative paid leave effective immediately so that Sierra Club may investigate the allegations."  Wolf Decl., Ex. 13, at 1; *see* Pl.'s SOF ¶ 42; Def.'s Resp. SOF ¶ 42.

Sierra Club's investigation revealed that Palkowski had sent numerous files from his Sierra Club email address to his personal email address.  On January 23, 2023, Palkowski sent himself an email containing five attachments without the permission or consent of Sierra Club.  Pl.'s SOF ¶ 35; Def.'s Resp. SOF ¶ 35; *see* Wolf Decl., Ex. 14, at 3, Dkt. 24-14.  The attachments contained confidential banking information and reconciliation reports for two Sierra Club entities.  Pl.'s SOF ¶ 36; *see* Wolf Decl., Ex. 15, Dkt. 24-15; *id.*, Ex. 16, Dkt. 24-16; *id.*, Ex. 17, Dkt. 24-17; *id.*, Ex. 18, Dkt. 24-18; *id.*, Ex. 19, Dkt. 24-19.  On February 3, 2023, Palkowski sent himself three emails containing 63 attachments, again without the permission or consent of Sierra Club.[1]  Pl.'s SOF ¶ 37; Def.'s Resp. SOF ¶ 37; *see* Wolf Decl., Ex. 20, Dkt. 24-20; *id.*, Ex. 21, Dkt. 24-21; *id.*, Ex. 22, Dkt. 24-22.  These attachments included multiple spreadsheets that contained home addresses, salaries, social security numbers, and employee benefits information of hundreds of Sierra Club employees, many of whom worked and resided in California.  Pl.'s SOF ¶ 38; *see* Wolf Decl., Ex. 23, Dkt. 24-23; *id.*, Ex. 24, Dkt. 24-24.[2]

---

[1] Although Palkowski asserts that he had "implied permission to send email communications to myself," Def.'s Resp. SOF ¶ 33, he does not advance this argument to defend his email activity on January 23, 2023, and February 3, 2023, *see id.* ¶¶ 35–38.  Indeed, Palkowski makes no argument that he had permission to send himself these 68 attachments, nor does he supply any evidence to support such an argument.  *See generally* Def.'s Opp'n.  Accordingly, the Court finds that there is no dispute that Palkowski lacked permission to send himself these documents.

[2] Sierra Club further alleges that Palkowski sent approximately 40 other emails from his work email to his personal email "with various other financial records, e-mails and documents."  Compl.

On April 21, 2023, as its investigation continued, Sierra Club extended Palkowski's administrative leave, in part because the investigation had been "hindered" by Palkowski's "refusal to make himself available for an interview."  Wolf Decl., Ex. 25, at 1, Dkt. 24-25; *see* Pl.'s SOF ¶¶ 43–44; Def.'s Resp. SOF ¶¶ 43–44.  On May 9, 2023, Sierra Club's outside counsel sent Palkowski a cease-and-desist letter demanding that he stop using the confidential documents he had sent to his personal email and to return them to Sierra Club.  Pl.'s SOF ¶ 45; Def.'s Resp. SOF ¶ 45.  The letter stated that Sierra Club had uncovered that Palkowski had sent himself attachments containing "confidential and proprietary information" on January 23, 2023, and February 3, 2023, in violation of Sierra Club's Policy on Confidential and Proprietary Information, a copy of which was attached to the letter.  Wolf Decl., Ex. 26, at 1, Dkt. 24-26.  Palkowski sent a letter in response refusing the demands of the cease-and-desist letter, Pl.'s SOF ¶ 46; Def.'s Resp. SOF ¶ 46, acknowledging that he had "been preserving certain accounting and finance documents since as far back as 2020," and stating that he "intend[ed] on retaining them so long as I feel it is necessary to protect and defend myself," Wolf Decl., Ex. 27, at 1–2, Dkt. 24-27.  At the end of his letter, he wrote that Sierra Club would "have to look elsewhere for a patsy."  *Id.* at 2.

On May 26, 2023, Sierra Club wrote in a letter to Palkowski that he would be terminated for violating Sierra Club's Policy on Confidential and Proprietary Information based on his email activity.  Wolf Decl., Ex. 28, at 1, Dkt. 24-28; *see* Pl.'s SOF ¶ 47; Def.'s Resp. SOF ¶ 47.  Palkowski was terminated on June 30, 2023, for "gross misconduct and mishandling of employee data."  Wolf Decl., Ex. 29, at 1, 3, Dkt. 24-29; *see* Pl.'s SOF ¶ 48; Def.'s Resp. SOF ¶ 48.  Because

---

¶ 15; Pl.'s SOF ¶ 39.  Palkowski admits that he sent other emails "without the express permission or consent of Sierra Club but lack[s] knowledge sufficient to admit or deny the dates or contents of any particular email message."  Def.'s Resp. SOF ¶ 39; *see* Answer ¶ 15, Dkt. 14.  Because this additional set of emails is not in the record, the Court will not consider it.

of Palkowski's actions, "Sierra Club was required to retain outside counsel to investigate and address his unlawful conduct; provide data breach notices to all impacted employees and regulatory authorities; and provide free credit monitoring and identity theft services to impacted employees." Pl.'s SOF ¶ 49; Wolf Decl. ¶ 30.

On March 14, 2024, Sierra Club filed this action against Palkowski. *See generally* Compl., Dkt. 1. In its order denying Palkowski's motion to dismiss, the Court previously construed Sierra Club's complaint as pressing three legal claims: (1) breach of contract; (2) breach of fiduciary duty; and (3) a violation of California's Comprehensive Computer Data Access and Fraud Act (CDAFA). *See Sierra Club v. Palkowski*, No. 24-cv-741, 2025 WL 1492790, at *2 (D.D.C. Jan. 28, 2025); Compl. ¶¶ 31, 36. Sierra Club's complaint seeks three forms of relief: (1) a declaratory judgment that Palkowski is liable under its three claims, *see Sierra Club*, 2025 WL 1492790, at *2; Compl. ¶ 31; (2) an injunction ordering Palkowski "to return or destroy all information he improperly transmitted from Sierra Club servers to his personal e-mail address," Compl. ¶ 38; and (3) compensatory and punitive damages and attorney's fees, Compl. ¶ 45.

Sierra Club filed a motion for summary judgment on July 18, 2025, Pl.'s Mot. 1, together with a statement of material facts, Dkt. 23-2, and a supporting declaration with attached exhibits, Dkt. 24. Sierra Club's motion asks the Court to enter judgment that Palkowski is liable on each of its three claims, Pl.'s Mot. 1, and to hold a trial to determine the appropriate relief, including the amount of any damages, Pl.'s Mem. in Supp. of Its Motion for Summ. J. 11, 15, Dkt. 23-1. Palkowski filed a non-responsive three-page opposition, Def.'s Opp'n, Dkt. 26, along with a

statement responding to Sierra Club's statement of material facts, Dkt. 26-1.[3]  In his opposition,

Palkowski states the following:

> I told myself that I would spend no more than three hours on this Response. Unfortunately, that did not prove to be sufficient time to gather my thoughts, research and exhibits. Therefore, in the interest of sparing my time, the Court's resources and taxpayer dollars, I would welcome a judgment against me in favor of Sierra Club.

Def.'s Opp'n 1 n.1.  His brief does not respond to any of Sierra Club's legal arguments.  *See* Def.'s

Opp'n 1–3.  Even though Palkowski appears to concede liability, the Court will independently

evaluate each of Sierra Club's claims.

On December 29, 2025, Sierra Club filed a supplemental memorandum in support of its

motion for summary judgment.  Dkt. 28.  This supplemental memorandum, together with an

accompanying declaration and exhibits, describes "a series of increasingly bizarre and disturbing

emails" containing "inappropriate content" that Palkowski has sent to Sierra Club's counsel during

this litigation.  Pl.'s Suppl. Mem. 1, Dkt. 28; *see* Declaration of Stephen Fogdall (Fogdall Decl.)

¶¶ 5–36, 39, Dkt. 29.  According to Sierra Club, Palkowski in these emails "admits that he is

actively disclosing Sierra Club's confidential information in his possession" and "makes what

appear to be veiled threats against Sierra Club's directors and employees."  Pl.'s Suppl. Mem. 1.

Although Sierra Club still seeks a trial to determine damages, it now asks the Court to issue two

---

[3] Palkowski proceeds *pro se*, but he is a licensed and practicing attorney.  *See* Compl. ¶ 4; Answer ¶ 4; Def.'s Reply Supp. Mot. to Dismiss 2, Dkt. 10.  For this reason, the Court did not issue a warning under *Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992), after Sierra Club filed its Motion for Summary Judgment.  *See Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 536 (D.C. Cir. 2024) ("Trained lawyers are generally not unsophisticated litigants in need of special protections, and any leniency afforded is left to the discretion of the district court."), *cert. denied sub nom. Spence v. Dep't of Veterans Affs.*, 145 S. Ct. 594 (2024); *Hedrick v. FBI*, 216 F. Supp. 3d 84, 93 (D.D.C. 2016) ("[W]hen faced with a motion for summary judgment, even a pro se plaintiff must comply with the Federal Rules of Civil Procedure and this Court's local rules, including this Court's rules regarding responding to statements of material fact and marshalling record evidence that establishes each element of his claim for relief." (citation modified)).

permanent injunctions when ruling on its motion for summary judgment: one directing Palkowski "to cease using Sierra Club's confidential and proprietary information, to return to Sierra Club all of the confidential information he stole, [and] to destroy any remaining copies," and another directing him "to cease his insulting, vulgar and disturbing emails to Sierra Club's counsel." *Id.* at 10.

## II.    LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that could affect the outcome of the lawsuit. *Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In reviewing the record, the Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

A party opposing summary judgment must "substantiate [its allegations] with evidence" that "a reasonable jury could credit in support of each essential element of [its] claims." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party is entitled to summary judgment if the opposing

7

party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    ANALYSIS

### A.    Choice of Law

Sierra Club presses three claims: two claims under state common law and another under state statutory law.  Sierra Club argues that, under the District of Columbia's choice-of-law rules, the Court should evaluate its breach-of-contract and breach-of-fiduciary-duty claims under District of Columbia law, Pl.'s Mem. in Supp. of Its Motion for Summ. J. 6–7, and also find Palkowski liable under California's statute penalizing fraudulent data usage, *id.* at 7–8.  Palkowski does not dispute that District of Columbia law governs the two common law claims or that the CDAFA applies to this case, nor does argue that any other state's law should apply.  *See generally* Pl.'s Opp'n.  He has therefore waived these choice-of-law issues.  *See Goodrich ex rel. Robert D. Goodrich Revocable Trust v. Bank of Am. N.A.*, 136 F.4th 347, 354 n.2 (D.C. Cir. 2025) (collecting cases); *Partridge v. Am. Hosp. Mgmt. Co.*, 289 F. Supp. 3d 1, 10 n.1 (D.D.C. 2017) ("[N]o party disputes the choice of substantive law, [so] the Court will not belabor its choice-of-law analysis.").

Nonetheless, the Court will briefly conduct the choice-of-law analysis as to each claim.  In determining which law to apply, the Court uses District of Columbia choice-of-law rules.  *See Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014) ("As a general matter, we must apply the choice-of-law rules of the jurisdiction in which we sit—namely, the District of Columbia.").  "The District of Columbia employs a 'governmental interests' analysis to determine the appropriate law to apply and considers these four factors: a) the place where the injury occurred; b) the place where the conduct causing the injury occurred; c) the domicile, residence[,] nationality, place of

incorporation and place of business of the parties; and d) the place where the relationship is centered." *Hawkins v. WMATA*, 311 F. Supp. 3d 94, 104 (D.D.C. 2018) (citing *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995)). "The aim of the analysis is to determine which jurisdiction's policies would be furthered by resolving the underlying dispute pursuant to its law." *Kroger v. Legalbill.com*, 436 F. Supp. 2d 97, 103–04 (D.D.C. 2006) (citing *Hercules & Co. v. Shama Rest. Corp.*, 566 A.2d 31, 41 n.18 (D.C. 1989)).

District of Columbia law governs Sierra Club's breach-of-contract claim. Palkowski worked for Sierra Club's Washington, D.C., office. *See* Wolf Decl., Ex. 2, at 1; *id.*, Ex. 3, at 2. Though Palkowski now lives in Massachusetts and may have worked remotely from Massachusetts during his employment at Sierra Club, *see* Pl.'s Mem. in Supp. of Its Motion for Summ. J. 6, he was employed by the D.C. office, his formal relationship with Sierra Club existed in the District of Columbia, and the alleged breach of his employment contract therefore happened in the District of Columbia, *see Hyman v. First Union Corp.*, 982 F. Supp. 8, 11 (D.D.C. 1997). Accordingly, the Court will apply District of Columbia law to the breach-of-contract claim.

For similar reasons, the Court will apply District of Columbia law to Sierra Club's breach-of-fiduciary-duty claim. The alleged fiduciary relationship between Sierra Club and Palkowski existed—and was allegedly breached—in the District of Columbia because Palkowski was employed by Sierra Club's D.C. office. Because the relationship was "centered" in the District of Columbia and the injury occurred here, the District of Columbia has the strongest interest in its law being applied. *See Hedgeye Risk Mgmt., LLC v. Heldman*, 412 F. Supp. 3d 15, 23 n.2 (D.D.C. 2019).

Finally, it is proper for the Court to consider Sierra Club's claim under California's Comprehensive Computer Data Access and Fraud Act. "When a plaintiff resides in a state with a

plaintiff-protecting law, [the governmental interests] test typically leads to the application of the law of plaintiff's domicile, as the state with the greatest interest in providing redress to its citizens." *Broidy Cap. Mgmt. v. Muzin*, No. 19-cv-0150, 2020 WL 1536350, at *15 (D.D.C. Mar. 31, 2020) (citation modified), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021).  Here, California-based Sierra Club alleges that Palkowski misappropriated its data and information.  Palkowski sent to his personal email documents that contained financial information of Sierra Club entities and the home addresses, salaries, social security numbers, and employee benefits information of hundreds of Sierra Club employees, many of whom worked and resided in California.  Having passed a relevant statute and provided a private cause of action, California has a strong interest in protecting data held by a California-based organization about itself and its California-based employees.  *See Broidy*, 2020 WL 1536350, at *15.  Because Palkowski offers no reason why any other state's interests should override California's, the Court will evaluate Sierra Club's claim under the CDAFA.

### B.     Breach-of-Contract Claim

Sierra Club contends that Palkowski is liable for "breaching his contractual obligation to protect the confidential information of Sierra Club and its employees."  Pl.'s Mot. 1.  "To prevail on a breach of contract claim in the District of Columbia, 'a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.'"  *Meyer Grp., Ltd. v. Rayborn*, 695 F. Supp. 3d 39, 52 (D.D.C. 2023) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)).

A valid contract exists between Sierra Club and Palkowski.  "[C]ontractual rights may arise from language in employee manuals."  *Strass v. Kaiser Found. Health Plan of Mid-Atl.*, 744 A.2d 1000, 1011 (D.C. 2000).  It is undisputed that Palkowski was employed by Sierra Club in 2023

and that Sierra Club maintained a policy called Employee Expectations for Confidential & Proprietary Information (Confidentiality Policy). *See* Wolf Decl., Ex. 1, at 1. All Sierra Club employees "must agree to abide by the Confidentiality Policy as a condition of employment." Wolf Decl. ¶ 5. The Confidentiality Policy does not "disclaim any implied contractual obligation[s]," *Strass*, 744 A.2d at 1011, and it explicitly states that "[a]n employee who improperly uses or discloses Sierra Club confidential business information will be subject to disciplinary action up to and including termination of employment and legal action, even if he or she does not actually benefit from the disclosed information," Wolf Decl., Ex. 1, at 3.[4]

This contract created an obligation not to misappropriate confidential information. The Confidentiality Policy broadly covers "any and all information disclosed to or known by employees because of employment with the Sierra Club that is not generally known to people outside the organization about its business," *id.* at 1, and it provides several non-exhaustive examples, including examples of covered information under the headings "Sierra Club Financial and Operational Information" and "Private Personnel Information," *id.* at 2. The Policy prescribes "General Rules" for using and maintaining confidential and proprietary information, including that "[e]mployees with access to confidential and proprietary information must maintain the

---

[4] In his response to Sierra Club's statement of facts, Palkowski argues that because the Confidentiality Policy in the record has an adoption date of 2021 on the first page and a January 2020 date on subsequent pages, its "validity and accuracy" are "call[ed] into question." Def.'s Resp. SOF ¶ 2; *see* Wolf Decl., Ex. 1, at 1–3. Palkowski also argues that the copy of the Confidentiality Policy in the record is "facially deficient" because of these inconsistent dates. Def.'s Opp'n 1 n.2. But because he supplies no record evidence to contest the validity of the Policy and his conduct at issue in this case occurred in 2023, his observation about inconsistent dates is insufficient to create any material dispute of fact. Finally, Palkowski argues that Sierra Club "fails to demonstrate that I was even made aware of this Confidentiality Policy." *Id.* Notably, Palkowski does not deny that he was aware of the Policy and offers no evidence to contest Sierra Club's assertion that compliance with the Policy was a condition of employment for all its employees. Accordingly, Palkowski fails to create a dispute of material fact as to whether he was bound by the Confidentiality Policy while employed by Sierra Club.

confidentiality and respect the proprietary nature of such information under all circumstances" and that "[u]pon termination of employment, all confidential and proprietary information must be returned to Sierra Club and this same information may not be recreated and/or delivered to anyone else." *Id.* at 2–3. The Court therefore agrees with Sierra Club's unrebutted argument that Palkowski had a contractual obligation to maintain the confidentiality of covered information and to return such to Sierra Club upon his termination.

Palkowski breached his obligation. On January 23, 2023, Palkowski sent from his Sierra Club email to his personal email five attachments without the permission or consent of Sierra Club. Pl.'s SOF ¶ 35; Def.'s Resp. SOF ¶ 35; *see* Wolf Decl., Ex. 14, at 3. These attachments contained confidential banking information and reconciliation reports for two Sierra Club entities. Pl.'s SOF ¶ 36; *see* Wolf Decl., Ex. 15; *id.*, Ex. 16; *id.*, Ex. 17; *id.*, Ex. 18; *id.*, Ex. 19. The Court finds that this information falls within the Policy's definition of confidential information under the heading, "Sierra Club Financial and Operational Information." Wolf Decl., Ex. 1, at 2. And on February 3, 2023, Palkowski sent from his Sierra Club email to his personal email 63 attachments without the permission or consent of Sierra Club. Pl.'s SOF ¶ 37; Def.'s Resp. SOF ¶ 37; *see* Wolf Decl., Ex. 20; *id.*, Ex. 21; *id.*, Ex. 22. These attachments included multiple spreadsheets that contained home addresses, salaries, social security numbers, and employee benefits information of hundreds of Sierra Club employees. Pl.'s SOF ¶ 38; *see* Wolf Decl., Ex. 23; *id.*, Ex. 24. The Court finds that this information falls within the Policy's definition of confidential information under the heading, "Private Personnel Information." Wolf Decl., Ex. 1, at 2.

By sending these files to his personal email address without the permission or consent of Sierra Club, Palkowski failed to "maintain the confidentiality and respect the proprietary nature of such information under all circumstances." *Id.* at 3. Further, when Sierra Club demanded that he

12

cease using and return or destroy the information and reminded him about his obligation under the Policy, a copy of which was attached to the letter, Wolf Decl., Ex. 26, Palkowski stated that he "intend[ed] on retaining" at least some of the information for "so long as I feel it is necessary to protect and defend myself," *id.*, Ex. 27, at 1–2.

Finally, Sierra Club suffered damages as a result of Palkowski's breach. Because of his actions, "Sierra Club was required to retain outside counsel to investigate and address his unlawful conduct; provide data breach notices to all impacted employees and regulatory authorities; and provide free credit monitoring and identity theft services to impacted employees." Wolf Decl. ¶ 30.[5] Although Palkowski disputes that Sierra Club incurred these expenses as "a consequence of [his] actions," Def.'s Resp. SOF ¶ 49, he offers no admissible evidence showing otherwise.

Palkowski's only argument in opposition—that "Sierra Club's own misconduct creates a genuine dispute about whether . . . any contract breach on my part was justified," Def.'s Opp'n 1— is undeveloped and unpersuasive. He offers no record evidence to demonstrate any misconduct by Sierra Club, nor does he cite any legal authority supporting a justification defense.

Accordingly, the Court will enter judgment in favor of Sierra Club on its breach-of-contract claim.

---

[5] The Court finds that Sierra Club's costs "to retain outside counsel to investigate and address [Palkowski's] unlawful conduct," Wolf Decl. ¶ 30, are sufficient to establish actual damages for its breach-of-contract claim and breach-of-fiduciary-duty claim, if monetary damages are a necessary element of the claim, *see CorpCar Servs. Houston, Ltd. v. Carey Licensing, Inc.*, 325 A.3d 1235, 1254 (D.C. 2024) ("There is some uncertainty in our case law about whether proof of actual monetary damages is an element of a breach of contract claim."). Absent additional briefing, the Court does not decide here whether Sierra Club's data breach mitigation costs for its employees so qualify. *Cf. Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 9–10, 13–16 (D.D.C. 2019) ("[P]rophylactic mitigation" costs incurred by identity theft victims "to protect against identity theft," without "any misuse of any personal information," are not "actual damages" sufficient for breach of contract and breach of fiduciary duty claims.), *reconsidered in part*, 518 F. Supp. 3d 43 (D.D.C. 2021) (noting conflict in D.C. caselaw about whether "proof of actual damages is an element of a D.C. contract claim" (citation modified)).

### C.    Breach-of-Fiduciary-Duty Claim

Sierra Club contends that Palkowski is liable for "breaching the fiduciary duty of loyalty he owed to Sierra Club."  Pl.'s Mot. 1.  To prevail on its claim under District of Columbia law, Sierra Club "must show (1) the existence of a fiduciary relationship; (2) a breach of the duties associated with the fiduciary relationship; and (3) injuries that were proximately caused by the breach of the fiduciary duties."  *Democracy Partners v. Project Veritas Action Fund*, 453 F. Supp. 3d 261, 278 (D.D.C. 2020) (citation modified).

The Court concludes that Palkowski breached his fiduciary duty to Sierra Club.  Because Palkowski was an employee of Sierra Club, he owed his employer a fiduciary duty.  *See id.* at 279 & n.18 (citing *Phillips v. Mabus*, 894 F. Supp. 2d 71, 92–93 (D.D.C. 2012)); *Cahn v. Antioch Univ.*, 482 A.2d 120, 131–32 (D.C. 1984).  Palkowski therefore had "obligations to act with the 'utmost good faith, loyalty, and honesty toward'" Sierra Club, *Cong. Hunger Ctr. v. Gurey*, 308 F. Supp. 3d 223, 228 (D.D.C. 2018) (quoting *Cahn*, 482 A.2d at 131–32), which included an obligation "not to use or communicate confidential information of the principal for the agent's own purposes," Restatement (Third) of Agency § 8.05 (2006); *see FDS Rest., Inc. v. All Plumbing Inc.*, 241 A.3d 222, 237 (D.C. 2020) (quoting the Third Restatement and observing that the D.C. Court of Appeals "has often relied" on the Restatement "to clarify principles of agency law"); *see also Hedgeye Risk Mgmt.*, 412 F. Supp. 3d at 26 n.3 (D.D.C. 2019).  Palkowski breached this duty when he sent to his personal email, without his employer's consent or permission, dozens of company files containing confidential information about Sierra Club and its employees, some of which he later admitted he was retaining "to protect and defend myself," Wolf Decl., Ex. 27, at 2.

14

Finally, as already discussed, Sierra Club has suffered damages caused by his breach. *See* Wolf Decl. ¶ 30.[6]

Palkowski's one argument in opposition fails. He contends that "Sierra Club's own misconduct creates a genuine dispute about whether . . . a fiduciary relationship existed between Sierra Club and me in the first place." Def.'s Opp'n 1. Once again, he offers no evidentiary or legal support for this argument.

For these reasons, the Court will enter judgment in favor of Sierra Club on its breach-of-fiduciary-duty claim.

### D.    CDAFA Claim

Sierra Club contends that Palkowski is liable for "violating California's Comprehensive Computer Data Access and Fraud Act," Pl.'s Mot. 1, and Palkowski offers no argument in response, *see generally* Def.'s Opp'n.

The CDAFA penalizes any person who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network." Cal. Pen. Code § 502(c)(2). It provides a private cause of action for the owner of the data "who suffers damage or loss" by a violation of the Act. *Id.* § 502(e)(1).

Palkowski's conduct violated the CDAFA. By accessing Sierra Club's confidential financial and personnel data—even if his access was authorized—and transferring them to his personal email account without Sierra Club's permission or consent, Palkowski knowingly accessed and without permission copied data from a computer network. *See United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) ("[L]ogging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly" violates

---

[6] *See supra* note 5.

15

the CDAFA.). Sierra Club suffered damages because of Palkowski's violation. *See* Wolf Decl. ¶ 30. And there is no record evidence to suggest that Palkowski was somehow acting "within the scope of lawful employment" when he transferred this data to his personal email, such that CDAFA's safe harbor provision would preclude liability. Cal. Pen. Code § 502(h)(1).

As a result, the Court will enter judgment in favor of Sierra Club on its CDAFA claim.

### E.        Equitable Remedy

Sierra Club requests a permanent injunction ordering Palkowski "to cease using Sierra Club's confidential and proprietary information, to return to Sierra Club all of the confidential information he stole, [and] to destroy any remaining copies."[7] Pl.'s Suppl. Mem. 10. As a threshold matter, to obtain a permanent injunction, Sierra Club must first succeed on the merits. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987). As the Court has explained, it has done so. Next, Sierra Club must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citations omitted).

Sierra Club is suffering irreparable harm that cannot be repaired by monetary damages alone. "Courts in this District have recognized that the disclosure of confidential information is,

---

[7] Sierra Club also requests an injunction ordering Palkowski to stop sending "insulting, vulgar and disturbing emails to Sierra Club's counsel." Pl.'s Suppl. Mem. 10. This requested injunction relies on a new claim that Sierra Club introduces for the first time in a supplemental memorandum in support of its motion for summary judgment. Because "a party may not amend its complaint or broaden its claims through summary judgment briefing," *Bean v. Perdue*, 316 F. Supp. 3d 220, 226 (D.D.C. 2018), the Court will not consider this request. Moreover, Palkowski has since "voluntarily" committed to "ceasing communicating with Sierra Club counsel altogether via email," Def.'s Resp. Pl.'s Suppl. Mem. 6, Dkt. 30, and has apologized for some of his emails, *see* Def.'s Letter to Sierra Club Counsel, Dkt. 31-1.

16

by its very nature, irreparable because such information, once disclosed, loses its confidential nature." *Robert Half Int'l Inc. v. Billingham*, 315 F. Supp. 3d 419, 433 (D.D.C. 2018) (citation modified); *see also Hosp. Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 200 (D.D.C. 2010). Here, Palkowski has sent emails to Sierra Club's counsel in which "he openly admits to possessing Sierra Club's confidential information," "boasts that he is actively using it to harm Sierra Club," and reveals that files are "now getting leaked to more people more quickly." Pl.'s Suppl. Statement of Facts ¶¶ 1, 8, Dkt. 28-1. His goal is to disparage Sierra Club, which he calls a "domestic terrorist group," so that the organization receives fewer donations. *See id.* ¶¶ 1–4, 9. This use and disclosure of confidential information is likely to lead to "a loss of trust and goodwill" and to "permanently damage relationships" between Sierra Club and its donors and other counterparties, *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 78 (D.D.C. 2001), all of which "cannot be cured through money damages" alone, *Robert Half Int'l*, 315 F. Supp. 3d at 434.

The balance of hardships tilts fully in favor of Sierra Club. Palkowski's hardship is minimal because he has no legitimate interest in possessing or using confidential information obtained from his former employer in violation of its Confidentiality Policy, which already requires him to destroy or return the information. *See Council on Am.-Islamic Rels. v. Gaubatz*, 667 F. Supp. 2d 67, 79 (D.D.C. 2009) (no harm to enjoined party when injunction orders "conduct already agreed to by Defendant"). Finally, the public interest favors protecting Sierra Club's confidential information and upholding the law because the injunction "would enforce the parties' contractual agreement and ensure the confidentiality of [Sierra Club's] information." *Hosp. Staffing Sols.*, 736 F. Supp. 2d at 201.

For his part, Palkowski contradicts himself. In emails to Sierra Club's counsel, the authenticity of which he does not dispute, he admits that he possesses Sierra Club's confidential

information and is using these files to harm the organization. *See* Pl.'s Suppl. Statement of Facts ¶ 1; Fogdall Decl., Ex. 4, Dkt. 29-4; *id.*, Ex. 5, Dkt. 29-5; *id.*, Ex. 15, Dkt. 29-15; *id.*, Ex. 20, Dkt. 29-20; *id.*, Ex. 21, Dkt. 29-21; *id.*, Ex. 24, Dkt. 29-24 ("I think I violated my fiduciary duty to Sierra Club again over the weekend.  Maybe I should stop sharing my files with people . . . or not . . . lol."); *id.*, Ex. 27, Dkt. 29-27.  Yet he later asserts that "I am not using any Sierra Club confidential or proprietary information, do not have any Sierra Club confidential information, did not steal any Sierra Cub confidential information, and do not have any copies of Sierra Club confidential information," Def.'s Resp. Pl.'s Suppl. Mem. 5, Dkt. 30, and thus denies that he has "any confidential or proprietary Sierra Club property or information to return or destroy," *id.* at 1–2.  He further maintains that he is "not *really* engaged in a campaign to dissuade donors from contributing to Sierra Club," though he "think[s] that is an excellent idea" because "Sierra Club is a reprehensible organization that is run by reprehensible individuals."  *Id.* at 5 (emphasis in original).  At the same time, he does "not have any objection to a narrowly-tailored injunction," *id.* at 2, or an "appropriate injunction or an order to remedy Sierra Club's concern," *id.* at 5.

For all of these reasons, the Court will order Palkowski to cease using Sierra Club's confidential and proprietary information, to return to Sierra Club all of the confidential information he transferred to his personal email address, and to destroy any remaining copies.

18

## CONCLUSION

For the foregoing reasons, the Court grants the plaintiff's Motion for Summary Judgment, Dkt. 23, and enters a permanent injunction. A separate order consistent with this decision accompanies this memorandum opinion.

<br>

_____
DABNEY L. FRIEDRICH
United States District Judge

March 31, 2026

19